UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ROGER SPARKS, <br> AS INDIVIDUAL <br><br> Plaintiff, <br><br> v. <br> RICHFIELD SULPHER <br> SOLUTIONS INC., <br><br><br> Defendant. | § § § § § § § § § § § § § § § § § | Civil Action No.: <br><br><br><br><br><br> COMPLAINT FOR <br> VIOLATIONS OF CIVIL RIGHTS <br> 42 U.S.C. § 1981 AND § 1983 <br><br> JURY TRIAL DEMAND |

_____

# COMPLAINT
_____

1. This is an action to recover damages and civil penalties for violations of Plaintiff's civil rights protected under the Fourth, Fifth and Fourteenth Amendments.

## I.
## PARTIES

2. Plaintiff Roger Sparks ("Sparks") is a resident of Texas City, Texas, residing at 219 Estelle Circle, Texas City, Texas 77591.

3. Defendant Richfield Sulpher Solutions Inc. ("RSS") is a business that is located within the Southern District of Texas. They are located at 300 31st Street South, Texas City, TX 77590.

## II.

## **VENUE, JURISDICTION AND CONDTIONS PRECEDENT**

4. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343 (civil rights).

5. The acts or omissions made the basis of this suit occurred in Harris County, Texas and in this judicial district, so venue is proper in this Court under 28 U.S.C. § 1391.

6. No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983 (or 42 U.S.C. §1981).

7. 42 U.S.C. Sections 1981 and 1983 for hostile work environment and retaliation.

## III.

## **STATEMENT OF THE CASE**

8. Plaintiff alleges that as a result of him being African American, or because he engaged in protected activities, Plaintiff was illegally harassed, subjected to a pattern of harassment and disparate treatment, and knowingly subjected to unjustified and factually unsupported disciplinary actions served in rapid series.  The rapid series of contrived disciplinary actions were designed to improperly manufacture a basis for heightened disciplinary penalties and thereby support a recommendation of termination and other retaliatory actions and harassment against Plaintiff from the Defendant and their representatives.

## IV.

## **BACKGROUND**

9. Section 1981 prohibits discrimination on the basis of race and has been interpreted broadly to prohibit any intentional workplace discrimination; including harassment on the basis of race. The Supreme Court has also held that retaliation is prohibited under Section 1981.

10. Plaintiff is an African American male, aged 59, who was working as a factory worker with Defendant.

11. On or about June 27, 2016, Plaintiff was hired by the Defendant to work as a forklift operator. While employed by Defendant, Plaintiff encountered discrimination by Defendant's management representatives and the company employees during the time of employment.

12. Plaintiff was discriminated against with regards to his lunch time and breaks.

13. Other non-protected employees would take longer lunches or breaks without any type of repercussions.  However Defendant did not provide proper breaks or time for lunch to Plaintiff as it did with non-protected class employees.

14. Per the Defendant's Company Manual, page 25 states that if an employee works 8 consecutive hours, then a 60 minute lunch break is provided, as well as 15-minute breaks for every 4 hours worked, which mirrors the federal statue.

15. However, while the Company Manual states this, this policy was not followed by the managers at the company. Defendant violated both company policy and federal policy when Plaintiff was not provided adequate time for breaks and for lunch.  This denial was because Plaintiff is an African-American.

16. On numerous occasions, Plaintiff was denied a 15 minute break after working 4 hours, which differed from other employees who were not in a protected class.

17. Defendant also told Plaintiff that he could not take a full hour for lunch as the other non-protected employees were able to do, and Defendant threatened to retaliate with shorter hours or a different work schedule if Plaintiff complained.

18. Additionally, due to the time clock malfunctioning, which Defendant was aware of, Plaintiff would be penalized when clocking back in after his lunch break. Plaintiff states that this was a way of punishing him and was a tactic used by management to ensure he took shorter breaks and lunch times. This differs from other non-protected employees as they were not penalized for taking full breaks or exceeding their allotted time.

19. On numerous occasions, Plaintiff was asked to perform work in areas he was not trained in or did not have the proper protective gear. Such instances occurred when there would be a chemical spill and Plaintiff was asked to clean it up, even though he did not have the proper protective gear and was not properly trained to dispose of the chemicals.

20. When Plaintiff asked why he was asked to do jobs that he was not trained for or that he was placed in danger, he was told, "Whatever we say to do, you have to do it".

21. Other non-protected employees were not subjected to the same criteria. Other non-protected employees were not asked to perform jobs they were not trained for, or to do work that placed them in danger. When chemical spills occurred, the non-protected employees would leave or watch but were not asked to aid in the clean-up.

22. When Plaintiff complained of the type of work that he was being asked to do, Defendant retaliated by decreasing his hours, which effectively dropped the amount of pay Plaintiff was bringing home. This retaliation occurred due to Plaintiff being an African American.

23. Plaintiff went to Defendant to speak about the fact that he was being treated differently when it came to the poor working conditions and the toxic spills. Defendant took no action to correct the problems. Further, not only did Defendant refuse to correct the problems brought to their attention, but they retaliated against Plaintiff for speaking up. After Plaintiff spoke to Defendant, his job duties began to be phased out. His work time was cut back dramatically, which impacted his earnings. He asked to be placed on more hours, but his requests went ignored. There was plenty of work, which can be evidenced by other non-protected employees being utilized to work Plaintiff's shifts.

24. Defendant continued its behavior of discrimination by not paying Plaintiff overtime when it was earned, while other non-protected employees were paid overtime who were working the same shifts as Plaintiff.

25. Defendant would state that the times that Plaintiff claimed overtime could be contributed to the broken time clock mentioned above. Defendant stated that because Plaintiff's overtime was due to a time clock malfunction, it was not properly earned and thus would not be paid to Plaintiff. However, other non-protected employees who used the same time clock were paid their overtime without any issue.

26. Other non-protected employees who had complained of the same issues did not encounter the same retaliation. Instead, they were given Plaintiff's hours as well as they were not written up as Plaintiff had been.

27. Because of Defendant's retaliation, Plaintiff suffered both financial distress and emotional distress.

28. Per federal statute, Plaintiff is in a protected class of employee.

29. Plaintiff was treated differently than non-protected employees. Other employees who are Caucasian spoke to Defendant about the same issues that Plaintiff mentioned, but they did not encounter the negative impact that Plaintiff encountered. The other non-protected employees did not have their hours cut back, were not written up for clocking in late, and were not let go, which were things that Plaintiff encountered, because of their race.

30. Other employees would call Plaintiff names. Plaintiff was the only African-American on his shift, and he worked with all Caucasians. There would be instances that the non-protected workers would call Plaintiff derogatory names and refer to his ethnicity. When confronted with this degrading behavior, the non-protected employees would say it was joke. Plaintiff brought these issues to Defendant who refused to address it and refused to correct the problem. Plaintiff also felt there would be retaliation if he voiced his concerns to Defendant.

31. Plaintiff would ask for help from the other workers in order to get some of his job tasks completed. All the Caucasian workers would look at him but ignore his requests for help. This caused Plaintiff to finish his duties behind schedule, which caused Defendant to treat him harshly.

32. When Plaintiff would fall behind schedule, his supervisor would yell at him and call him derogatory names based on his race. This would not happen to the other non-protected class workers if they fell behind.

33. Plaintiff was asked to work near, or under, a grain dispenser that was attached overhead. During his employment, the dispenser became unsecure and unsafe. Instead of replacing the machine, or making efforts to properly install the dispenser, Defendant decided to use a chain and "spare" supplies in order to keep the dispenser in place. Not only was this not proper procedure, but it put Plaintiff at danger of being injured as well as caused emotional stress over the fear of being injured daily.

**V.**

**CAUSE OF ACTION**

**42 U.S.C. Sections 1981 and 1983 hostile work environment and retaliation claims**

Violation of 42 U.S.C. §1981(on behalf of the African American Plaintiff)

34. Plaintiff incorporates the allegations set forth above as if set forth verbatim herein.

35. But for the actions of the Defendant, Plaintiff would not have had to endure a hostile work environment, would have received same pay, and would not have been retaliated against when he questioned work assignments.

36. Proximately and directly as a result of Defendant's conduct, Plaintiff has suffered damages including but not limited to mental anguish, lost status in his employment,

6

emotional distress, and/or loss of salary and other compensation. These would not have occurred but for the actions of the Defendant.

37. Defendant's discrimination of Plaintiff is in violation of the rights of Plaintiff and the class afforded him by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

38. By the conduct described above, Defendant intentionally deprived the above-named African American of the same rights as are enjoyed by white employees to the creation, performance, enjoyment, and all benefits and privileges, of his employment relationship with Defendant, in violation of 42 U.S.C. §1981.

39. As a result of Defendant's discrimination in violation of Section 1981, the African American Plaintiff has been denied employment opportunities providing compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling him to compensatory damages. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff and class member, thereby entitling him to an award of punitive damages.

40. The aforementioned allegations amount to retaliation for Plaintiff's protected objects of racial discrimination. Defendant, via its managing agents, has engaged in intentional retaliation and has done so with malice or reckless indifference to the federally protected rights of Plaintiff.

41. The conduct of Defendant complained of herein was willful, malicious, oppressive,

wanton and in complete disregard of the rights of Plaintiff.

42. To remedy the violations of the rights of Plaintiff and the class secured by Section 1981, Plaintiff requests that the Court award him the relief prayed for below.

## VI.

## **DAMAGES**

43. Because of statutorily impermissible and willful, if not malicious, acts of the Defendant and its employees, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to 42 U.S.C. §1981Title. As a consequence of the unlawful and outrageous actions of Defendant, Plaintiff has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish. Plaintiff seeks recovery, compensatory, and equitable (i.e., back pay and front pay) damages of $80,000.00 plus attorney's fees, and costs

## VII.

## **JURY TRIAL DEMAND**

44. Plaintiff demands a jury trial and tenders the appropriate fee with this Petition.

## VIII.

## **PRAYER**

WHEREFORE Plaintiff ROGER SPARKS, respectfully prays that Defendant be cited to appear and file an answer herein and that the Court award judgment in favor of Plaintiff at

Defendant, jointly and severally, for all damages and amounts to which Plaintiff is entitled, plus any amounts allowable under law for pre-judgment interest, post-judgment interest, attorneys' fees, and court costs; tax the court costs and discretionary costs of this against Defendant; and award any such further relief, at law or in equity, to which Plaintiff may show it is justly entitled.

        Respectfully submitted,

        REIFEL LAW FIRM, PLLC

        */s/ Ross B. Reifel*
        Ross B. Reifel
        Texas Bar No. 24088286
        S. D. Tex. 2543350
        4801 Woodway Dr., Suite 230W
        Houston, Texas 77056
        Telephone: (832) 241-7020
        Facsimile: (832) 213-1230
        E-Mail rossreifel@reifelattorney.com

        ATTORNEY FOR PLAINTIFF